**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00767-RPM

CALVIN BROWN,
JESUS GARCIA,
CHRISTOPHER HENDERSON,
and
SEAN THOMAS.


       Plaintiffs,

v.

CITY OF AURORA,
CHIEF MICHAEL GARCIA, in his individual and official capacity, and
LIEUTENANT KENNETH KAHLER, in his individual and official capacity.


       Defendants.

_____

**AMENDED COMPLAINT AND JURY DEMAND**
_____

       Plaintiffs Calvin Brown, Jesus Garcia, Christopher Henderson and Sean Thomas by and through their counsel, David A. Lane and Casey Denson of KILLMER, LANE & NEWMAN, LLP, respectfully allege for their Amended Complaint and Jury Demand as follows:

### I.      INTRODUCTION

      2.     1.     Plaintiffs Calvin Brown and Jesus Garcia are tenured, experienced firefighters. They boast long, successful careers with departments across the country. In 2012, when they received offers to work for the Aurora Fire Department ("AFD"), they relocated to Colorado and looked forward to the chance to demonstrate their skills and success with a new

department. Their chances to do so were cut short, however, when AFD discriminated against them on account of their race and retaliated against them for their participation in an internal investigation involving one of Mr. Brown's and Mr. Garcia's fellow lateral recruits and a superior officer.

3.      Mr. Brown was rehired by the AFD in 2015, and hoped to have a fair chance to prove that he was an experienced capable firefighter who could succeed in the AFD. His chance to do so was once again cut short when he was discriminated against on the basis of his race, and retaliated against participating in the AFD's 2012 internal race discrimination investigation and for filing a Chargeo of Discrimination with the 2012 Equal Employment Opportunity Commission ("EEOC"), alleging that he was discriminated against on the basis of his race.

4.      Plaintiff Sean Thomas was also a tenured, experienced firefighter. He relocated to work at the AFD in 2014 in the hopes of having a long, successful career with the department. However, his chances to do so were cut short when the AFD discriminated against him on account of his race and perceived disability. Mr. Thomas was fired, and subsequently, filed an EEOC Charge alleging race and disability based discrimination. Although Mr. Thomas was reassured that he had a spot in the upcoming class, when he reapplied for a position with AFD, he was not rehired—both because of his race and in retaliation for filing the EEOC Charge.

5.      Plaintiff Christopher Henderson, former Deputy Fire Chief of the AFD, rose through the ranks of the AFD from when he was hired as a firefighter in 1991 until he was promoted as deputy chief in 2010.  In 2014, he discovered that he was paid less than similarly situated white deputy chiefs, at least as far back as December 2013. Although in August 2014 the AFD retroactively increased his salary back to May 31, 2014, he was never compensated for

the remainder of the time that he was underpaid. In 2015, based on his race, and in retaliation for opposing and reporting unlawful employment practices against minorities, he was demoted, placed on administrative leave, given a written reprimand and placed on a performance improvement plan.

6.       This is an action against AFD for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et. seq., and 42 U.S.C. §§ 1981 and 1983. Defendants' illegal conduct has caused Mr. Brown, Mr. Garcia, Mr. Thomas and Mr. Henderson to suffer significant damages and losses.

7.       **II.       JURISDICTION AND VENUE** Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et. seq.**,** and 42 U.S.C. §§ 1981 and 1983. Jurisdiction supporting Plaintiff's claims for attorney's fees and costs is conferred by 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988.

8.       Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in the District of Colorado and the employment practices alleged herein to be unlawful were committed in the District of Colorado.

### III.       ADMINISTRATIVE PREREQUISITES

9.       Plaintiffs alleging violations of Title VII timely filed Charges of Discrimination with the Equal Employment Opportunity Commission and have received their Notices of Right to Sue. Thus, all administrative prerequisites have been met.

## IV.   PARTIES

10.   Plaintiff Calvin Brown is a resident of, and domiciled in, the State of Colorado. At all times relevant to this Complaint he was employed by Defendant.

11.   Plaintiff Jesus Garcia is a resident of, and domiciled in, the State of Florida. At all times relevant to this Complaint he was employed by Defendant.

12.   Plaintiff Christopher Henderson is a resident of, and domiciled in, the State of Colorado. At all times relevant to this Complaint he was employed by Defendant.

13.   Plaintiff Sean Thomas is a resident of, and domiciled in, the State of Louisiana. At all times relevant to this Complaint he was employed by Defendant.

14.   Defendant City of Aurora ("Aurora") is a political subdivision of the State of Colorado and is responsible for the supervision, training, official policies, customs, and actual practices of its agents, the Aurora Fire Department and its firefighters. Aurora has continuously been an "employer" within the meaning of Title VII at all times relevant to this Complaint. Defendant Chief Michael Garcia is a resident of and domiciled in the State of Colorado. At all times relevant to this complaint, he was employed by the City of Aurora. As the Fire Chief of the AFD, he was involved in the day-to-day operations of the AFD, was responsible for the hiring and termination of lateral candidates, and was the direct supervisor of Christopher Henderson.

15.   Defendant Lieutenant Kenneth Kahler is a resident of and domiciled in the State of Colorado. At all times relevant to this complaint, he was employed by the City of Aurora.  In 2012, Lt. Kahler was responsible for testing Mr. Brown and Mr. Garcia after the academy to while they were on probationary status. In 2014, as an instructor in the AFD training academy,

4

Lt. Kahler was responsible for the day-to-day operations of the academy, and had direct responsibility for the supervision of Mr. Thomas.

## V.      FACTUAL ALLEGATIONS

**Calvin Brown and Jesus Garcia's 2012 Termination**

16.      Calvin Brown (African American) and Jesus Garcia (Hispanic) were hired by AFD and entered the Rocky Mountain Fire Academy ("Academy") in January 2012. They were experienced lateral hires. Mr. Brown spent several years as a firefighter in Garden City, Kansas. Mr. Garcia came to AFD with six years' firefighting and emergency medical services experience from Hialeah, Florida.

17.      Both men were highly successful in their previous positions. Mr. Brown, for example, was 2007's Firefighter of the Year for Lafayette Fire and Rescue and Firefighter of the Month in 2010 in Garden City. They were thrilled with the opportunity to work for AFD.

18.      Predictably, based on their track records and experience, Mr. Brown and Mr. Garcia excelled in the Academy.

19.      AFD's one-year probationary program requires new hires to pass practical skills tests at their three-, six-, nine-, and twelve-month anniversaries. Both men received excellent reviews, and neither failed an exam or skills test, on their three-month anniversary.

20.      Mr. Brown and Mr. Garcia graduated from the Academy in April 2012 and were then placed in specific fire stations with AFD.

21.      They performed well in their respective stations and received no disciplinary actions or negative reviews.

22.     Their success was halted, however, beginning in June 2012, by the discriminatory and retaliatory conduct of their team of AFD instructors – superiors separate and apart from Mr. Brown's and Mr. Garcia's superiors at their respective stations.

23.     For each of their periodic test sessions, Mr. Brown and Mr. Garcia were evaluated, at least in part, by the same core team of instructors: Captain James Moon, Chief Kris Anderson, Lieutenant James Eitel, and Lieutenant Mitchell Harr (replaced by Lieutenant Kenneth Kahler).

24.     During their six-month anniversary testing, Mr. Brown and Mr. Garcia, and one of their fellow recruits Ryan Goosley (Caucasian), witnessed one of their instructors, Lieutenant Harr, target and berate another recruit, Nathanial Lewis (African American), for failing his practical skills test.

25.     Mr. Lewis initiated a complaint of race discrimination against Lieutenant Harr with his superior that day. AFD launched an internal investigation of the incident.

26.     As part of the investigation, AFD required Mr. Brown and Mr. Garcia to submit to an interview and to provide a statement to the investigator.

27.     Neither man was comfortable doing so; in fact, Mr. Garcia told the investigator that he did not want to participate because of the hostility that he and his fellow lateral, racial minority recruits had already sensed and experienced by their team of instructors, including Lieutenant Harr. Mr. Garcia feared that hostility would only increase in retaliation for his cooperation in the investigation of Lieutenant Harr.

28.     Seemingly to alleviate his concerns, however, and to elicit his participation, the investigative team assured Mr. Garcia that if he faced any sort of retaliation for his participation in the investigation, they would address it.

29.     On that reassurance, both Mr. Brown and Mr. Garcia submitted to interviews and provided their statements.

30.     The investigation concluded that Lieutenant Harr had violated several internal policies, but did not find that he discriminated against Mr. Lewis. AFD suspended Lieutenant Harr for a short period of time.

31.     Thereafter, Mr. Brown and Mr. Garcia went back to working their shifts at their assigned stations, where they resumed their previous success and encountered no performance or disciplinary issues with their superiors.

32.     But when it came time for their nine-month periodic test session, when they faced their team of instructors again for the first time since the investigation – the same instructors, including Lieutenant Kahler, who had worked closely with Lieutenant Harr and were acutely aware of the investigation into his allegedly discriminatory conduct and Mr. Brown's and Mr. Garcia's participation in that investigation – Mr. Brown's and Mr. Garcia's performance was suddenly and inexplicably deficient.

33.     Specifically, it was deficient on the practical skills portion of the testing, which is dependent largely on the instructor's subjective evaluation of the subject's performance.

34.     Now at the whim of the subjective evaluation of that same core of AFD instructors, just weeks after their participation in the investigation and upon their first encounter

with those instructors following the investigation, Mr. Garcia and Mr. Brown failed their nine-month practical tests.

35.     Based upon their experience and the nuances of the particular practical skills on which they were tested, their failures were unjustified.AFD gave Mr. Brown and Mr. Garcia an opportunity to retest, but their retest was again administered in part by Lieutenant Kahler. Lieutenant Kahler and the instructor team failed Mr. Brown and Mr. Garcia on their retests, after providing them with the wrong tools to complete the test and/or then citing only minor mistakes as the bases for the fails.

36.     Mr. Brown e-mailed the City Attorney's Office on September 29, 2012 concerning his fear that he, and the other recruits, were failed on the nine month examination in retaliation for the participation in Lt. Harr's investigation. Mr. Garcia called the City Attorney's Office to report retaliation, just minutes later, City Attorney Peter Morales informed him that there was no evidence of retaliation.

37.     On October 15, 2012, AFD allowed Mr. Brown, Mr. Garcia, Mr. Goosely and Mr. Lewis to retest but failed them all again.

38.     When Mr. Garcia voiced concerns (again), this time to Chief Garcia, that the AFD instructors were discriminating and retaliating against Mr. Brown and him, AFD allowed Mr. Garcia and Mr. Brown to retest with an outside agency on October 18, 2012.

39.     On October 18, 2012, Mr. Garcia and Mr. Brown were stopped from completing the test, and told that they would be given an "incomplete."

40.     Chief Garcia abruptly terminated Mr. Brown in a letter dated October 18, 2012, and on October 22, 2012 was told by Chief Garcia that he had failed the retest.

41.     On October 22, 2012, Mr. Garcia informed Chief Garcia again that he felt he was being retaliated against. Chief Garcia told Mr. Garcia he had failed the retest, but gave Mr. Garcia an opportunity to retest again.

42.     Mr. Garcia tested again with an outside agency, but failed the test, in part because he was not given the proper tools.

43.     Chief Garcia fired Mr. Garcia nearly immediately after the retest. Of the four individuals who witnessed the incident involving Lieutenant Harr and participated in the investigation into his conduct, only one remained employed with AFD – Ryan Goosley – the only white individual involved in the investigation.

44.     AFD fired the other three firefighters – Mr. Brown, Mr. Garcia, and Mr. Lewis – just weeks after their participation in the investigation of discrimination and harassment. All three are members of protected classes.

45.     AFD's conduct has caused Mr. Brown and Mr. Garcia significant injuries, damages, and losses.

**Calvin Brown's 2015 Termination.**

46.     In 2012, Mr. Brown filed an EEOC Charge alleging that he was terminated on the basis of his race and in retaliation for his participation in the investigation.

47.     Mr. Brown reapplied for the AFD in 2014, and was offered a job as a lateral recruit in the January 2015 Academy.

48.     Before Mr. Brown even started at the Academy, he was treated differently based on his race, and in retaliation for his role in the 2012 investigation and his 2012 EEOC Charge. For example, he was required to have a specialist confirm that he was healthy enough to attend

the Academy, even though his doctor found nothing of concern during his physical. Upon information and belief, other minority lateral recruits were also required to undergo additional testing or have specialists confirm their fitness for the academy and Caucasian recruits were not. Mr. Brown was also informed by his former coworkers that that chief in charge of training at the academy was upset that Mr. Brown was rehired.

49.     Once Mr. Brown started at the academy, the training staff targeted him based on his past role in the 2012 investigation and EEOC Charge. For example, instructors repeatedly mentioned that Mr. Brown was repeating the Academy in front of the other students. Mr. Brown felt targeted by their reference to his previous time in the academy because it raised the issue of his prior illegal race based and retaliatory termination. Additionally, some instructors explicitly held Mr. Brown to a higher standard. Some instructors made statements that he should be leading the class, and already know everything, and on some occasions, refused to teach him the skills for upcoming tests. However, the materials and tests had changed since Mr. Brown was last at the Academy, leaving him in the untenable position of being held to a higher standard while he received less instruction that his peers. When Mr. Brown tried to raise this issue, instructors called him argumentative, or a liar. Throughout the academy, the instructors falsely accused Mr. Brown of lying.

50.     During the Academy, the instructors treated the minority recruits worse than the white recruits. Although some white recruits passed the Academy, every single AFD minority recruit was forced to quit or was fired from the January 2015 Academy.

51.     Based on his race, and in retaliation, the Academy instructors found Mr. Brown deficient on the practical skills portion of the Academy testing, which is dependent largely on the

instructor's subjective evaluation of the subject's performance. Academy instructors also wrote Mr. Brown up for minor violations (e.g. failing to bring a water bottle to class and wearing a necklace) and inaccurately reported other violations, causing him to lose points throughout his time at the Academy.

52.     Mr. Brown was fired on February 24, 2015. In a letter, Chief Garcia explained that he was terminating Mr. Brown based on the loss of points resulting from the series of minor and inaccurately reported violations documented by the Academy training staff.

53.     AFD's conduct has caused Mr. Brown significant injuries, damages, and losses. **Sean Thomas's 2014 Termination**

54.     Mr. Thomas (African American) was a tenured, experienced firefighter from New Orleans, Louisiana. He was hired as a lateral minority recruit for the January 2014 AFD Academy.

55.     Mr. Thomas was targeted throughout the Academy because of his race. For example, instructors often accused Mr. Thomas of lagging during physical training, even though he was new to high altitudes, and at times, injured. In one instance, he was taken to the Emergency Room for treatment, and afterwards, the instructors criticized him, called him names, and made jokes at his expense publically. In contrast, when white recruits struggled during physical training, the instructors did not target them.

56.     Mr. Thomas was also written up for failing skill tests he in fact passed. For example, on or about February 10, 2014, while participating in a diminished space evolution, Mr. Thomas was physically unable to pass through the tunnel because of his size, but instructors told him that he could fit, and as a result, failed him on the test.

57.     Additionally, just a few days into the academy, Mr. Thomas was written up for insubordination for failing to shave even though he explained that he had use clippers the night before but did not shave with a razor due to a medical condition called "pseudo folliculitis barbae," a condition which commonly afflicts African-American men.

58.     On March 12, 2014, Mr. Thomas made the first of several visits to doctors due to a problem with his liver function and possible blood clots. Mr. Thomas informed the training staff at the AFD about his medical concerns on March 13, 2014. Despite this, on March 14, 2014, when Mr. Thomas was close to vomiting, the AFD staff mocked him, and did not offer assistance.

59.     Mr. Thomas alerted staff on March 16 and 18, 2014, that he had a CAT scan on March 17, 2014. On March 18, 2014, he tried to leave documentation about the procedure with Captain Frank, but could not find him. Training staff sent two recruits to find Mr. Thomas, and instructors accused him of "hiding" and lying.

60.     On March 19, 2014, while Mr. Thomas was running, Lt. Kahler told another staff member that he was "sick" of Mr. Thomas, and wanted to "get his ass out of here."

61.     Throughout the Academy, Mr. Thomas was able to participate in all the activities of the Academy, although he required some time off to go medical appointments

62.     On March 20, 2014, Mr. Thomas informed instructors that he needed time to participate in a doctor's appointment by phone, and, after again explaining about his facial condition, Lt. Kahler, the lead instructor, wrote him up for failing to obey grooming standards and insubordination a second time. Lt. Khaler made a recommendation that Mr. Thomas be

terminated which was passed up the chain of command to Chief Garcia who then made the decision to terminate Mr. Thomas.

63.     On March 20, 2014, Mr. Thomas was fired. He was informed by training staff that he was terminated, and presented with a letter informing of his termination from Chief Garcia. Many of the violations he was alleged of committing in the letter were minor, and many were inaccurate (e.g. failure to shave, and failure to complete the diminished clearance evolution). After the AFD terminated Mr. Thomas, instructors told him that he could sign a letter of resignation to maintain his eligibility of civil service positions in the future. Mr. Thomas signed a letter of resignation.

64.     In April 2014, Mr. Thomas spoke with Mr. Henderson and Chief Garcia about reapplying for a job with the AFD. Chief Garcia apologized to Mr. Thomas for the fact that he was terminated from the last academy, and informed him that he was fired in part because he was a large African American man who was intimidating because he did not smile enough. Chief Garcia told Mr. Thomas that if he applied again, Chief Garcia would hire him.

65.     In July 2014, Mr. Thomas applied again for the AFD. Over the next several months, Mr. Thomas passed each step of the application process including a physical, agility test, and was recommended for hire after an interview. Chief Garcia personally selected Mr. Thomas as his first choice for the 2015 Academy.

66.     At the end of 2014, or beginning of 2015, Mr. Thomas filed a Charge of Discrimination with the EEOC.

67.     Soon after, Chief Garcia told Mr. Thomas that he was not going to rehire him.

68.     AFD's conduct has caused Mr. Thomas significant injuries, damages, and losses.

**Christopher Henderson's Unequal Pay, Demotion, Administrative Leave, Written Reprimand and Performance Improvement Plan.**

69.     Mr. Henderson (African American) was hired as a firefighter by the AFD in 1991. Throughout the years, he achieved a series of promotions culminating in his promotion to Deputy Fire Chief on April 10, 2010. Mr. Henderson is a paramedic, credentialed Chief Fire Officer designee, Executive Development Institute Graduate, Executive Fire Officer Graduate, National Society of Executive Fire Officer member, has a master's degree, and was the longest tenured deputy chief by 2014.

70.     Despite Mr. Henderson's credentials and successes, he was paid less than the deputy chiefs newly hired in December 2013. Mr. Henderson was the longest tenured deputy chief, but, the other new deputy chiefs, who were all white, were paid more. Mr. Henderson raised the issue with Chief Garcia several times, and finally, on August 8, 2014, the AFD raised his pay to match the other deputy chiefs, but only retroactively back to May 31, 2014.

71.     During his time as Deputy Fire Chief, Mr. Henderson zealously advocated for policies designed to hire and ensure the success of minorities in the AFD. He did this in many different roles. For example, Mr. Henderson was an Equal Employment Opportunity Officer, and as part of his official functions addressed discrimination complaints. Mr. Henderson also worked with the City Attorney's Office to help resolve the issues plaguing minority employees for several months beginning in late 2014. Additionally, in his personal capacity, Mr. Henderson frequently worked with other AFD employees to attempt to address issues affecting minority employees. For example, he was a member of Colorado Black Professional Firefighters association, an organization of AFD black firefighters that worked to support minorities at the AFD by sharing information about discrimination and offering support for one another. Chief

Garcia was aware that Mr. Henderson regularly engaged in these professional and personal activities related to his attempts to improve the treatment of minorities at the AFD.

72.     One of Mr. Henderson's job functions was working to hire minority lateral recruits. When Chief Garcia removed this job from him, Mr. Henderson e-mailed Chief Garcia in early January 2015 to protest the change, in part, because he feared this would undo the years of effort he put into overseeing the hiring of diverse candidates. On January 21, 2015, Mr. Henderson also e-mailed his concerns to the City Attorney's Office.

73.     Soon after Mr. Henderson expressed his unhappiness with Chief Garcia's decision, Chief Garcia demoted Mr. Henderson. On February 18, 2015, Chief Garcia wrote a letter attempting to justify the demotion. He asserted that the demotion was based, in part, on Mr. Henderson's e-mail to the City Attorney regarding his concerns about Chief Garcia removing his involvement in minority lateral hires. Chief Garcia demoted Mr. Henderson to Battalion Fire Chief. This was a demotion of two ranks. To Mr. Henderson's knowledge, the allegations in Chief Garcia's letter were never investigated, Mr. Henderson was never given the opportunity to respond in a hearing or other setting, and he was not given any warning before the demotion.

74.     On July 8, 2015, while Mr. Henderson was serving as battalion fire chief, he was issued a Notice of Investigation, and was placed on administrative leave for the duration of the investigation, which lasted over three months. No one ever discussed any of the issues raised in the investigation with Mr. Henderson before he was put on leave.

75.     The AFD scheduled a meeting in August for Mr. Henderson to discuss the results of the investigation. However, after Mr. Henderson filed a Charge of Discrimination with the EEOC on August 26, 2015 alleging that he was demoted and put on leave based on his race and

in retaliation, the AFD cancelled his meeting. Over a month later, the meeting was rescheduled, and on October 12, 2015, the AFD gave Mr. Henderson a written reprimand, and placed him on a performance improvement plan, claiming that half of the allegations in investigated were substantiated.

76.     AFD's conduct has caused Mr. Henderson significant injuries, damages, and losses.

## VI.     STATEMENT OF CLAIMS FOR RELIEF

**As to all Plaintiffs:**

### FIRST CLAIM FOR RELIEF
### Race Discrimination under 42 U.S.C. section 1981
### (Against all Defendants)

77.     Plaintiffs hereby incorporate all paragraphs of this Complaint as though fully set forth herein.

78.     Title 42 U.S.C. § 1983 ("Section 1983") is the jurisdictional vehicle appropriate to obtain relief against a state actor for a violation of Title 42 U.S.C. § 1981 ("Section 1981").

79.     Title 42 U.S.C. § 1981 ("Section 1981") provides, in pertinent part:

(a)  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, to be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . .

(b)  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

(c) The rights protected by this section are protected against . . . impairment under color of State law.

80.     Mr. Brown, Mr. Henderson and Mr. Thomas are African American men, and thus a member of a protected class under Section 1981. Mr. Garcia is Hispanic, and thus a member of a protected class under Section 1981.

81.     Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas are, and have at all times been, qualified to perform their job responsibilities, and have performed them at all times at least satisfactorily.

82.     Defendants denied Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas the protections against race discrimination provided by Section 1981 in the terms and conditions of their employment by denying them the same benefits, privileges, and terms and conditions of their contractual employment relationship that their white counterparts enjoyed, and by terminating Mr. Brown, Mr. Garcia and Mr. Thomas, refusing to rehire Mr. Thomas, and by underpaying, demoting, writing up, and putting Mr. Henderson on administrative leave and a performance improvement plan, and other discriminatory actions.

83.     Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas's race was a motivating factor for Defendants' actions.

84.     Defendant Garcia and Kahler's discrimination against Plaintiffs on the basis of their race caused Defendant City of Aurora to take adverse employment actions as described in Paragraph 82.

85.     Defendants Garcia and Kahler are not entitled to qualified immunity for the complained of conduct. Defendants' conduct violated clearly established rights belonging to Plaintiffs of which a reasonable person in Defendants' positions knew or should have known, as described more fully herein.

86.     Defendant City of Aurora engaged in race discrimination against Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas pursuant to its custom, policy, or practice to retain and otherwise treat more favorably white employees versus non-white employees.

87.     Defendant's conduct was willful, wanton and in reckless disregard of Plaintiffs' federally protected rights, and was the proximate cause of significant injuries, damages and losses that they incurred.

**SECOND CLAIM FOR RELIEF**
**Retaliation under 42 U.S.C. section 1981**
**(Against all Defendants)**

88.     Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

89.     Title 42 U.S.C. § 1983 ("Section 1983") is the jurisdictional vehicle appropriate to obtain relief against a state actor for a violation of Title 42 U.S.C. § 1981 ("Section 1981").

90.     Mr. Brown, Mr. Garcia, Mr. Thomas and Mr. Henderson engaged in activities and speech in opposition to employment practices prohibited by Section 1981 by objecting to and reporting discrimination and retaliation to the EEOC, City Attorney's Office, Chief Garcia and other AFD employees.

91.     Defendants treated Plaintiffs more adversely than their similarly situated counterparts who did not voice their opposition to Defendants' discrimination.

92.     Because of Plaintiffs' objections to discrimination, Defendants Garcia and Kahler's subjected them to adverse treatment, including but not limited to subjecting them to disparate treatment, terminating Mr. Brown and Mr. Garcia, refusing to rehire Mr. Thomas,

issuing written reprimands, and demoting and placing Mr. Henderson on administrative leave, among other adverse employment actions.

93.     Defendant Garcia and Kahler's retaliation against Plaintiffs caused Defendant City of Aurora to take the adverse employment actions described in paragraph 92 above.

94.     Defendant City of Aurora engaged in race discrimination against Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas pursuant to its custom, policy, or practice to adversely treat employees who voice opposition to discrimination or harassment.

95.     Defendants Garcia and Kahler are not entitled to qualified immunity for the complained of conduct. Defendants' conduct violated clearly established rights belonging to Plaitniffs of which a reasonable person in Defendants' positions knew or should have known, as described more fully herein.

96.     Defendants' conduct was engaged in with malice or with reckless indifference to Plaintiffs' federally protected rights within the meaning of Sections 1981 and 1983.

97.     Defendants' retaliation against Plaintiffs was the direct and proximate cause of severe injuries, damages and losses.

### THIRD CLAIM FOR RELIEF
### FIRST AMENDMENT - RETALIATION
### (Against all Defendants)

98.     Plaintiff hereby incorporates all allegations contained in this Complaint as though fully set forth herein.

99.     Title 42 U.S.C. § 1983 ("Section 1983") is the jurisdictional vehicle appropriate to obtain relief against a state actor for a violation of Title 42 U.S.C. § 1981 ("Section 1981").

100.     Mr. Brown, Mr. Thomas and Mr. Henderson filed Charges of Discrimination with the EEOC, conduct which is protected activity under the First Amendment's right to petition the government. Moreover, Mr. Brown, Mr. Garcia, and Mr. Henderson made written and/or verbal comments regarding the treatment of minorities by the AFD, conduct which is also protected activity under the First Amendment's right to petition the government.

101.     The issues raised by Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas were not solely related to only their own rights, but rather raised issues of significant public concern and rights affecting other minority employees.

102.     Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas engaged in protected activities of speech and petition under the First Amendment that were not expressed pursuant to their official duties.

103.     Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas's interest in commenting on and opposing systemic race discrimination by the AFD against themselves and others similarly situated, and petitioning the government for a remedy for such discrimination outweighs any potential disruptive effect of that speech.

104.     Defendants retaliated against Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas for engaging in First Amendment-protected activity, including but not limited to terminating Mr. Brown and Mr. Garcia, refusing to rehire Mr. Thomas, and issuing written reprimands, demoting and placing Mr. Henderson on administrative leave.

105.     Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas's First Amendment-protected activity was a motivating factor in Defendants' retaliation against them.

106.     Defendant City of Aurora engaged in race discrimination against Mr. Brown, Mr. Garcia, Mr. Henderson and Mr. Thomas pursuant to its custom, policy, or practice to retain and otherwise treat more favorably white employees versus non-white employees.

107.     Defendants Garcia and Kahler are not entitled to qualified immunity for the complained of conduct. Defendants' conduct violated clearly established rights belonging to Plaintiffs of which a reasonable person in Defendants' positions knew or should have known, as described more fully herein.

**As to Plaintiffs Brown, Garcia and Thomas:**

**FOURTH CLAIM FOR RELIEF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e,** *et seq.*
**Discrimination[1] (Against Defendant City of Aurora)**

108.     Plaintiffs hereby incorporate all paragraphs of this Complaint as though fully set forth herein.

109.     As African American men, Mr. Brown and Mr. Thomas are a members of a protected class under Title VII. As a Hispanic man, Mr. Garcia is a member of a protected class under Title VII.

110.     Defendant City of Aurora treated Mr. Brown, Mr. Garcia and Mr. Thomas less favorably than their similarly situated white counterparts by failing them on their practical skills exams, writing them up for certain infractions, and eventually for firing  them based on a series

---

[1] Plaintiff Henderson has filed a Charge of Discrimination alleging racial discrimination in the EEOC, and will move to amend the complaint to add Title VII race discrimination claims after he is issued a notice of right to sue. Additionally, Mr. Brown and Mr. Thomas filed new Charges of Discrimination alleging race discrimination in the EEOC in 2015 based on their respective termination and failure to rehire by the City of Aurora. Mr. Brown and Mr. Thomas will move to amend the complaint to add an additional Title VII race discrimination claim after they are issued a notice of right to sue.

of minor and inaccurate alleged infractions, and for firing Mr. Brown and Mr. Garcia in retaliation for their participation in the investigation of Lieutenant Harr's conduct.

111.    Mr. Brown, Mr. Garcia and Mr. Thomas were subjected to adverse treatment in the terms and conditions of their employment because of their race, including but not limited to, Defendant's terminations of their employment.

112.    At all pertinent times, Mr. Brown, Mr. Garcia and Mr. Thomas performed the functions of their job competently and were qualified for their positions.

113.    Despite their qualifications, Defendant City of Aurora fired Mr. Brown, Mr. Garcia and Mr. Thomas, in whole or in part, because of their race.

114.    Defendant's asserted reasons for firing Mr. Brown, Mr. Garcia and Mr. Thomas were mere pretext for illegal discrimination.

115.    Defendant City of Aurora is liable for the acts and/or omissions of its agents and employees. Defendant City of Aurora, either directly or by and through its agents, discriminated against Mr. Brown, Mr. Garcia, and Mr. Thomas on the basis of their race, and directly and proximately caused them injuries, damages, and losses.

116.    Defendant City of Aurora's acts and conduct were committed with malice or with reckless indifference to Mr. Brown, Mr. Garcia, and Mr. Thomas's federally protected rights within the meaning of Title VII.

**As to Plaintiffs Brown and Garcia:**

**FIFTH CLAIM FOR RELIEF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e,** *et seq.*

**Retaliation[2] (Against Defendant City of Aurora)**

117.    Plaintiffs hereby incorporate all of the paragraphs of this Complaint as though fully set forth herein.

118.    Mr. Brown and Mr. Garcia opposed activities prohibited by Title VII by participating in the investigation of Lieutenant Harr's allegedly discriminatory conduct toward Mr. Lewis.

119.    As a direct result of Mr. Brown's and Mr. Garcia's opposition to activities prohibited by Title VII, Defendant City of Aurora subjected Mr. Brown and Mr. Garcia to adverse treatment, including but not limited to, firing them.

120.    Defendant City of Aurora is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its agents, retaliated against Mr. Brown and Mr. Garcia and directly and proximately caused them severe injuries, damages, and losses.

121.    Defendant's acts and conduct were committed with malice or with reckless indifference to the federally protected rights of Mr. Brown and Mr. Garcia within the meaning of Title VII.

**As to Plaintiff Sean Thomas:**

**SIXTH CLAIM FOR RELIEF**
**Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et. seq.**
**Discrimination**
**(Against Defendant City of Aurora)**

---

[2] Plaintiff Henderson has filed a Charge of Discrimination alleging retaliation in the EEOC, and will move to amend the complaint to add Title VII retaliation claims after he is issued a notice of right to sue. Additionally, Mr. Brown and Mr. Thomas filed new Charges of Discrimination alleging retaliation in the EEOC in 2015 based on their respective termination and failure to rehire by the City of Aurora. Mr. Brown and Mr. Thomas will move to amend the complaint to add an additional Title VII race discrimination claim after they are issued a notice of right to sue.

115.    Plaintiffs hereby incorporate all paragraphs of this Complaint as though fully set forth herein.

116.    Mr. Thomas was suffering from a disability, had a record of having a disability and/or a perceived disability.

117.    Defendant City of Aurora knew Mr. Thomas was suffering from a disability, had a record of having a disability and/or a perceived him as disabled.

118.    Mr. Thomas's perceived disability was a motivating factor in Defendant's decision to terminate Mr. Thomas.

119.    Mr. Thomas was able to perform the essential functions of his job.

120.    Defendant City of Aurora is liable for the acts and/or omissions of its agents and employees. Defendant City of Aurora, either directly or by and through its agents, in discriminating against Mr. Thomas on the on the basis of his disability and/or a record or perception of disability, and directly and proximately caused them injuries, damages, and losses.

121.    Defendant City of Aurora's conduct was willful, wanton and in reckless disregard of Mr. Thomas's federally protected rights, and was the proximate cause of significant injuries, damages and losses that they incurred.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant, and award them all relief as allowed by law, including, but not limited to the following:

    a.  Declaratory relief and injunctive relief, as appropriate;

    b.  Actual economic damages as established at trial;

c.  Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d.  Punitive damages against the individual defendants for all claims as allowed by law in an amount to be determined at trial;

e.  Pre-judgment and post-judgment interest at the highest lawful rate;

f.  Attorney's fees and costs; and

g.  Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 9th day of December, 2015.

KILLMER, LANE & NEWMAN, LLP

*s/ David Lane*
_____
David Lane
Casey Denson
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000

*Attorneys for Plaintiff*